**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

KEVIN SQUIRES and ALETA
SQUIRES,

    Plaintiffs,

v.

STATE FARM FIRE &
CASUALTY COMPANY,

    Defendant.

CIVIL ACTION NO.
1:17-CV-2613-RWS

## **ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment [Doc. No. 60].

## I.    Factual Background

This is a breach of contract action arising out of a fire loss which occurred on July 14, 2015, at Plaintiffs' property in Canton, Georgia. Plaintiffs submitted a personal property claim due to the fire loss to their insurer, Defendant State Farm, which provided insurance coverage to the property pursuant to policy number 11-CZ-D447-3 [Id., ¶¶ 1-3, admitted].

At the time of the fire, Plaintiffs were in bankruptcy proceedings and making payments pursuant to a Chapter 13 reorganization plan [Id., ¶ 5, admitted].

On July 14, 2015, Plaintiffs initiated a claim for damages to their real and personal property as a result of the fire loss [Id., ¶ 21, admitted]. During the course of the claim, Plaintiffs submitted five sworn inventories and proofs of loss to Defendant [Id., ¶ 38, admitted]. Plaintiffs' inventories claimed substantial damage to personal property items, including damages totaling $32,844.88 in one guest room (primarily clothing), $13,195 in another guest bedroom (primarily clothing), $18,957 in a third guest bedroom (primarily clothing), $8,887,51 in the master bedroom, $10,527 in the great room, $4,927.97 in the basement, and $14,146 in "other" building expenses, including $10,000 in landscaping and a new hot water heater [Id., ¶ 42, admitted]. Two of the inventories (from September 21 and December 8, 2015) were submitted while the bankruptcy was pending, and they sought damages to personal property assets totaling $144,881.81 or $91,815 respectively. These amounts were substantially more than the $2,925 of personal property assets disclosed in the bankruptcy action.

Ultimately, Defendant denied Plaintiffs' personal property claim on the basis that Plaintiffs concealed and misrepresented material information in conjunction with their claim. Plaintiffs then filed this action on July 11, 2017 [Doc. No. 1]. Plaintiffs seek damages for breach of contract and for bad faith

2

failure to pay their insurance claim pursuant to O.C.G.A. § 33-4-6. Defendant has now moved for summary judgment [Doc. No. 60]. The Court will provide additional facts as necessary below.

## II. Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The applicable substantive law identifies which facts are material. Id. at 248. A fact is not

3

material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences that are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

### III. Analysis

Defendant contends that Plaintiffs are judicially estopped from seeking

4

more than the amount of personal property assets asserted in their bankruptcy action. Defendant also contends that Plaintiffs' bad faith claim is procedurally and substantively deficient. The Court will address these arguments in turn.

**A.     Judicial Estoppel**

"Judicial estoppel is an equitable doctrine invoked at a court's discretion." Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002) (quoting New Hampshire v. Maine, 532 U.S. 742, 750 (2001)). "Under this doctrine, a party is precluded from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." Id. (internal quotations omitted). "The purpose of the doctrine is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." Id. (internal quotations omitted).

The Eleventh Circuit considers two primary factors in the application of judicial estoppel. "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." Id. (quoting Salomon Smith Barney, Inc. v. Harvey, M.D., 260 F.3d 1302, 1308 (11th Cir. 2001). The Eleventh Circuit also considers secondary factors, including (1)

5

whether a party persuaded a court to accept a position based on inconsistent statements; and (2) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not stopped. Ajaka v. Brooksamerica Mortg. Corp., 453 F.3d 1339, 1344 (11th Cir. 2006).

Judicial estoppel often applies in the bankruptcy context because "[a] debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets, to the bankruptcy court." Id. at 1286 (quoting 11 U.S.C. §§ 521(1), 541(a)(7)). Moreover, "[t]he duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change." Burnes, 291 F.3d at 1286. The failure to timely amend a Chapter 13 plan to reflect a pending claim while simultaneously pursuing that claim in another court of law constitutes inconsistent positions under oath. Ajaka, 453 F.3d at 1344.

### i. Previous Inconsistent Position under Oath

First, the Court must consider whether Plaintiffs previously took inconsistent positions under oath in a prior proceeding. In their April 27, 2011 Voluntary Petition for Chapter 13 bankruptcy, Plaintiffs indicated their assets

6

totaled only $2,925, excluding cash accounts and automobiles [Doc. No. 60-2]. Plaintiffs executed this petition and attested "under penalty of perjury" that the information contained therein was true and correct [Id.]. These assets are well below the inventories and proofs of loss submitted in support of their insurance claim:

(1) September 21, 2015     $144,881.81

(2) December 8, 2015       $91,815

(3) September 3, 2016      $143,458

(4) May 26, 2017           $148,726

(5) June 29, 2017          $140,442

[Doc. No. 60-9, ¶¶ 38-40]. The first two inventories were submitted while the bankruptcy was still pending. The later three inventories contained substantially the same items as included on the first two inventories [Id., ¶ 41, admitted]. The lion's share of the personal property claimed on the inventories submitted to Defendant but omitted from the bankruptcy proceedings consisted of clothing, household goods, furniture, and electronics [Id., ¶ 43, admitted].

Plaintiffs made the express representation to Defendant that these items were in the property at the time of the fire and were damaged and/or destroyed in

7

the loss. But Defendant argues that photographs from the day following the loss do not depict the volume of personal property items or amount of damage asserted by Plaintiffs. Additionally, although Plaintiffs amended their bankruptcy documents on multiple occasions during the pendency of the bankruptcy, including to request permission to open personal lines of credit, to incur debt to purchase a new car, and to identify a personal injury claim, they never amended their documents to identify their claim with Defendant or to identify additional personal property assets [Id., ¶¶ 15, 56, admitted].

Plaintiffs have provided three increasingly creative explanations for these inconsistencies. Initially, during her August 25, 2016 examination under oath, Ms. Squires claimed that she listed particular values for her household goods based on the advice of counsel [Doc. No. 62, pp. 45-46]. Then, at her subsequent deposition on April 17, 2018, Ms. Squires testified that she only included business assets on her bankruptcy documents and did not disclose her insurance claim because the bankruptcy was for their business, Squires Commercial Carriers [Doc. No. 67, pp. 63-64]. Of course, Plaintiffs could not file a Chapter 13 bankruptcy for their business.

Now, apparently for the first time, Plaintiffs argue that they listed "thrift

store values" of their personal property. They attempt to claim that while they included all of the items listed on their inventories for Defendant in their bankruptcy petition, they valued the items significantly lower based on their age and condition. However, if Plaintiffs are to be believed, the "thrift store" value of these same items is a mere 2% of their retail value [compare Doc. Nos. 60-2 and 71-18].

Under these circumstances, the Court finds that Plaintiffs have made prior sworn statements in the bankruptcy proceeding that are inconsistent with their statements in the investigation of their insurance claim and in this litigation. Even assuming that they in good faith used thrift store values to evaluate their personal property assets in the Chapter 13 bankruptcy proceeding, they indisputably failed to inform the Bankruptcy Court that they expected to receive over $140,000 from their personal property claim with Defendant.

### ii. Calculated to Make a Mockery of the Judicial System

Second, the Court must consider if such inconsistencies have been calculated to make a mockery of the judicial system. In making this decision, the Court should evaluate the totality of the circumstances. Slater v. U.S. Steel, 871 F.3d 1174, 1185-88 (11th Cir. 2017).

The Court is particularly concerned that Plaintiffs clearly received an unfair advantage in the bankruptcy proceeding by failing to accurately provide information about their assets and by failing to disclose their insurance claim. Plaintiffs received a discharge of approximately $34,000 of unsecured debt [Doc. Nos. 60-5 and 60-6]. The Bankruptcy Court was entitled to know that Plaintiffs expected these funds so that it could determine whether to use any of the proceeds to satisfy Plaintiffs' creditors.

The Court has also considered that:

(1) Plaintiffs knowingly concealed assets from the Bankruptcy Court;

(2) Plaintiffs had motive to conceal their personal property assets;

(3) Plaintiffs had ample notice, but yet still failed to correct the inconsistency;

(4) Plaintiffs are educated, sophisticated parties; and

(5) Plaintiffs took these inconsistent positions despite ample access to counsel.

Under these circumstances, the Court finds that Plaintiffs' inconsistencies were calculated to make a mockery of the judicial system.

10

AO 72A
(Rev.8/82)

### iii. Conclusion

For the reasons discussed above, Defendant is entitled to summary judgment on Plaintiffs' breach of contract claim due to judicial estoppel. Plaintiffs are estopped from seeking more than $2,925 in personal property damages from Defendant. Since Defendant has already paid $4,000 to Plaintiffs, it has satisfied its obligations under the insurance contract.

### B. Bad Faith Claim

Defendant is also entitled to summary judgment on Plaintiffs' bad faith claims. Under Georgia law, "bad faith . . . means any frivolous and unfounded refusal in law or in fact to comply with the demand of the policyholder to pay according to the terms of the policy." Progressive Casualty Ins. Co. v. Avery, 302 S.E.2d 605, 606 (Ga. Ct. App. 1983). Standing alone, "the mere fact of non-payment is not evidence of bad faith, nor is any burden thereby cast on the insurer to prove good faith." Florida Int'l Indem. Co. v. Osgood, 503 S.E.2d 371, 374 (Ga. Ct. App. 1998) (citation omitted). If an insurer can show reasonable and probable cause for making a defense, the good faith of the company is vindicated as effectually as would a complete defense to the action. Rice v. State Farm Fire and Cas. Co., 430 S.E.2d 75, 78 (Ga. Ct. App. 1993) (citation omitted). If there

11

AO 72A
(Rev.8/8
2)

are genuine factual issues about whether an insurer has reasonable grounds to contest a claim, there can be no bad faith as a matter of law. <u>Allstate Ins. Co. v. Smith</u>, 597 S.E.2d 500, 503 (Ga. Ct. App. 2004).

Here, for the reasons discussed above, Defendant had reasonable grounds to contest Plaintiffs' insurance claim. The Court also notes that Plaintiffs did not comply with the procedural requirements of O.C.G.A. § 33-4-6 because they prematurely filed suit.

## IV. Conclusion

For the reasons discussed above, Defendant's Motion for Summary Judgment [Doc. No. 60] is GRANTED. The Clerk is DIRECTED to enter judgment and close this action.

**SO ORDERED**, this 28th day of February, 2019.

_____
**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)